UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JPMORGAN CHASE BANK, N.A.,
                              Plaintiff,

            -v-

29-33 NINTH AVENUE, LLC, *et al.*,
                              Defendants.

22-CV-3865 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff JPMorgan Chase Bank, N.A. ("Chase") brings this interpleader action against

Defendants, who are various individuals and entities affiliated with ten Chase bank accounts that

Chase froze upon receiving notice of a conflict among various parties with an interest in the

accounts.[1]  Chase seeks an accounting of the rightful ownership of those funds, which have been

frozen since May 2021.

    Defendants Danucht Entertainment, Richard Akiva, and Jacqueline Akiva (collectively,

the "Akiva Defendants") bring counterclaims against Chase, asserting that Chase unlawfully

prevented them from accessing the frozen accounts.  Defendant Katz Group also brings a

crossclaim against Defendants Butter Management and ConnectOne Bank, seeking a declaration

that Katz Group's interest in the relevant accounts has priority over any other creditors' interest

and requesting turnover of those funds.

---

[1] Defendants consist of 29-33 Ninth Avenue, LLC; Butter Management, LLC; 9039
Sunset Boulevard, LLC; 17th Street Entertainment II, LLC; 30th Street Entertainment LLC;
Cassa NY Restaurant LLC; Katz Group USA, Corp.; Danucht Entertainment, LLC; Richard
Akiva; Jacqueline Akiva; Sam Tell and Son, Inc.; Manhattan Beer Distributors LLC; Southern
Glazers Wine and Spirits of New York, LLC; ConnectOne Bank; and The N.E.W. Corp.

Before the Court are four motions.  First, Chase moves for an injunction restraining any party from pursuing the funds outside this interpleader action, an order compelling Defendant N.E.W. Corp. to return funds already obtained from two of the accounts in question, and leave to deposit funds with the court and to be discharged from liability.  That motion is granted in part and denied in part.  Second, the Akiva Defendants move to join additional necessary parties to the action.  The Court denies that motion without prejudice to renewal.  Third, Chase moves to dismiss the Akiva Defendants' counterclaims; that motion is granted.  Finally, Defendant ConnectOne moves to dismiss the Katz Group's crossclaim; that motion is also granted.

## I.    Background

### A.    Factual Background

At issue in this case are ten accounts with Chase held by six accountholders: 29-33 Ninth Avenue, LLC; Butter Management, LLC; 9039 Sunset Boulevard, LLC; 17th Street Entertainment II, LLC; 30th Street Entertainment LLC; and Cassa NY Restaurant LLC.  (ECF No. 96 ¶¶ 2, 30-36; ECF No. 141 ¶¶ 2, 30-36.)  Butter Management is the manager of at least four of the interpleader defendant entities, and the accountholders other than Butter Management are collectively referred to as the "Butter Affiliates."  (ECF No. 96 ¶ 2; ECF No. 141 ¶ 2.) Butter Management and the Butter Affiliates have been involved in the hospitality industry, operating nightclubs and restaurants around the country.  (ECF No. 96 ¶ 38; ECF No. 107 ¶ 38; ECF No. 113 ¶ 38; ECF No. 141 ¶ 38.)  Butter Management is jointly owned by Katz Group (which has a 50% ownership stake), Danucht Entertainment (which has a 49% ownership stake), and Jacqueline Akiva (who has a 1% ownership stake).  (ECF No. 96 ¶ 37; ECF No. 141 ¶ 37.)

Chase alleges that in a letter dated May 13, 2021, counsel for Katz Group wrote to Chase informing Chase that it was "engaged in a dispute with Butter Management LLC's other members, Danucht Entertainment, LLC and Jacqueline Akiva."  (ECF No. 96-11.)  The letter

instructed that "[d]uring the pendency of this dispute, no payments or withdrawals should be permitted from the accounts listed below"—the ten accounts described above—"except with the written authorization" of certain individuals.  (*Id.*)  Chase alleges that it then restricted the ten accounts that month due to the letter (ECF No. 96 ¶ 44), and that it subsequently received notices of executions against funds in those accounts from November 2021 through November 2022 (*id.* ¶¶ 54-58).

### B.    Procedural History

On May 12, 2022, Plaintiff Chase filed this interpleader action.  (ECF No. 1.)  Chase filed an amended complaint on November 30, 2022, which remains the operative complaint.  (ECF No. 96.)  In the interim, the Clerk issued certificates of default against the six accountholders.  (ECF Nos. 56-61.)

The Court resolves four outstanding motions before it in the following order.  First, Chase filed a motion seeking, among other relief, an injunction restraining any party from pursuing funds outside of this interpleader action.  (ECF No. 133.)  ConnectOne Bank, Katz Group, The N.E.W. Corp., and the Akiva Defendants each filed responses to Chase's motion.  (ECF Nos. 151-54.)  Chase then filed a reply.  (ECF No. 162.)

Second, the Akiva Defendants filed a letter motion seeking joinder of additional necessary parties.  (ECF No. 160.)  Chase filed a response to that letter.  (ECF No. 161.)

Third, the Akiva Defendants asserted counterclaims against Chase in their answer to Chase's complaint.  (ECF No. 141.)  Chase moved to dismiss those counterclaims (ECF No. 168), the Akiva Defendants filed an opposition (ECF No. 172), and Chase filed a reply (ECF No. 175).

Fourth, Defendant Katz Group filed a crossclaim against Defendants Butter Management and ConnectOne Bank in its answer, asserting that its interest in the relevant funds has priority over any other parties' interests.  (ECF No. 67.)  ConnectOne filed a motion to dismiss Katz Group's crossclaim (ECF No. 73), Katz Group filed an opposition (ECF No. 79), and ConnectOne filed a reply (ECF No. 81).[2]

## II.   Discussion

Chase brings this action pursuant to Federal Rule of Civil Procedure 22 and the federal interpleader statute, 28 U.S.C. § 1335.  (ECF No. 96 ¶ 1.)[3]  Interpleader is a procedural device that "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding."  7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1704 (3d ed. 2023); *see also Wash. Elec. Coop. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993) ("Rooted in equity, interpleader is a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund.").

Interpleader actions typically proceed in two stages.  During the first, a court determines whether an interpleader action is appropriate and whether the stakeholder is entitled to bring the action.  If interpleader is warranted, the court proceeds to stage two, at which point it determines

---

[2] ConnectOne Bank, Katz Group, and Chase stipulated that Chase's subsequent filing of an amended complaint did not affect the filings related to ConnectOne Bank's motion to dismiss Katz Group's crossclaim.  (*See* ECF No. 108.)

[3] Interpleader under Rule 22 is referred to as "rule interpleader," as opposed to "statutory interpleader," which is interpleader under 28 U.S.C. § 1335.  "The two types of interpleader serve the same purpose and perform the same function, and differ only in their requirements for subject matter jurisdiction, venue, and service of process."  *Great Wall de Venezuela C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474, 482 n.11 (S.D.N.Y. 2015).

the rights of the competing claimants to the fund.  *See Great Wall de Venezuela C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474, 482 (S.D.N.Y. 2015).  This opinion primarily addresses issues involving the first stage.

### A.    Chase's Motion for Injunctive and Other Relief

Chase requests that this Court enjoin all Defendants from attempting to recover the interpleader funds outside of this action, to compel Defendant N.E.W. Corp. to return funds it previously obtained from some of the relevant accounts, and to permit Chase to deposit the interpleader funds with the Court and be discharged from liability upon such deposit.  (*See* ECF No. 135.)  Chase's motion is granted in part and denied in part.  Specifically, the Court issues an injunction against interpleader Defendants to prevent recovery of funds outside of this action through the institution or prosecution of any court proceedings, and it grants Chase's request to deposit funds, at which point Chase will be discharged from liability.  Chase's request to claw back funds from N.E.W. Corp., however, is denied.

### 1.    Injunction Against Interpleader Defendants

Chase first seeks an injunction against Defendants to prevent them from attempting to recover the relevant funds outside this interpleader action.  (ECF No. 135 at 13-15.)  Chase invokes the Court's authority under 28 U.S.C. § 2361, which provides that a district court may, in any interpleader action under 28 U.S.C. § 1355, "issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court."  28 U.S.C. § 2361.  Moreover, a court "may . . . make the injunction permanent, and make all appropriate orders to enforce its judgment."  *Id.*  Section 2361 "enables a party meeting the requirements" of the federal interpleader statute "to obtain a restraining order without following the procedures set forth in [Federal Rule of Civil Procedure]

65[], which normally governs the issuance of injunctive relief." *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 104 (S.D.N.Y. 2013).

"It is well established that the interpleader statute is 'remedial and to be liberally construed,' particularly to prevent races to judgment and the unfairness of multiple and potentially conflicting obligations." *Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 151 (2d Cir. 2016) (quoting *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967)). Here, enjoining Defendants from pursuing the funds is "necessary to protect the Plaintiff . . . from overlapping lawsuits and to ensure the effectiveness of the interpleader remedy." *Metro. Life Ins. Co.*, 966 F. Supp. 2d at 104; *see also Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1066 (S.D.N.Y. 1992) ("An injunction against overlapping lawsuits is desirable to insure the effectiveness of the interpleader remedy. It prevents the multiplicity of actions and reduces the possibility of inconsistent determinations."). Notably, no Defendant specifically opposes Chase's requested relief. (ECF No. 151 ¶ 9 (ConnectOne Bank "has no objection" to this request); ECF Nos. 152-54.)

The Akiva Defendants, however, contest more generally whether Chase's action meets the requirements of interpleader in the first place, as an injunction under Section 2361 can issue only if Section 1335's requirements for an interpleader action have been met. *See* 28 U.S.C. § 2361 ("In any civil action of interpleader or in the nature of interpleader *under section 1335 of this title*, a district court may issue . . ." (emphasis added)). "The federal interpleader statute confers original jurisdiction on federal district courts where '[t]wo or more adverse claimants [of at least minimally] diverse citizenship' may or do claim entitlement to 'money or property of the value of $500 or more,' . . . provided that the plaintiff 'has deposited such money or property' into the registry of the court or 'has given bond payable to the clerk of the court in such amount

and with such surety as the court or judge may deem proper.'"  *Hapag-Lloyd*, 814 F.3d at 150-51

(quoting 28 U.S.C. § 1355).  Because the Court concludes that Chase has met the federal

interpleader statute's requirements and that its requested injunction prohibiting pursuit of funds

outside this action falls within Section 2361's grant of authority, such relief is granted.

The Akiva Defendants first contend that Chase's suit does not satisfy the requirements

for interpleader because there is no single fund at issue.  An interpleader action requires "the

existence of a single, specific, or identifiable res (e.g., money, property, 'stake,' or 'fund')".

*Coopers & Lybrand, L.L.P. v. Michaels*, No. 94-CV-5643, 1995 WL 860760, at *8 (E.D.N.Y.

Oct. 31, 1995) (citing *State Farm*, 386 U.S. at 530).  That requirement "contemplates that there

exist[s] something analogous to a distinct fund or other thing of value subject to competing

claims."  *Bankers Tr. Co. v. Mfrs. Nat'l Bank of Detroit*, 139 F.R.D. 302, 307 (S.D.N.Y. 1991).

According to the Akiva Defendants, because this case involves over two million dollars in ten

different accounts held by six different accountholders, it is ineligible for treatment as a single

interpleader action.  (ECF No. 154 at 11-12.)

Contrary to the Akiva Defendants' position, the multiple accounts involved in this action

are sufficiently related and distinct as a group to constitute an identifiable res.  "The federal

interpleader statute contains no specific requirement of a single fund or liability," and "the

requirement of a 'single fund' is not interpreted in a blindly literal fashion."  *N.Y. Life Ins. Co. v.

Singh*, No. 14-CV-5726, 2017 WL 10187670, at *5 (E.D.N.Y. Mar. 8, 2017).  Here, although

there are ten different accounts, the existence of "a single plaintiff, a discrete period of time, and

a single source of liability" bring this action "within the traditional ambit of interpleader."  *Bear

Stearns Sec. Corp. v. 900 Cap. Servs., Inc.*, 204 F. Supp. 2d 538, 542 (E.D.N.Y. 2002).

Accordingly, the existence of multiple accounts does not categorically preclude an interpleader

action.  *See e.g.*, *Fidelity Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 177 (E.D.N.Y. 2002) (concluding interpleader action was appropriate in an action seeking to "resolve potentially competing claims to funds and securities held by [the plaintiff] in various brokerage accounts" (internal quotation marks omitted)); *see also Bear Stearns*, 204 F. Supp. 2d at 542 (collecting cases).  Further, the ten accounts Chase identifies are closely related to each other, supporting their treatment as a single res.  Chase alleges that all the accounts are managed by Butter Management, LLC (ECF No. 96 ¶¶ 2, 37), an allegation that is supported by a letter from Defendant Katz Group to Chase (ECF No. 96-11 at 2), and all ten accounts list Jacqueline Akiva as the depositor, suggesting common ownership of all the accounts (ECF No. 96-1-10).  Chase was exposed to potential liability due to the conflicting claims of Katz Group and the Akiva Defendants, and that conflict extended to the ten accounts at issue—making the ten accounts the appropriate subject of this interpleader action.  (*See* ECF No. 96-11.)

In contrast, "[c]ases where courts have declined to find a single fund suited to interpleader . . . involve inchoate or shifting liability on the part of plaintiffs"—a situation inapplicable here.  *Singh*, 2017 WL 10187670, at *5.  For example, this is not a case in which "multiple plaintiffs may be seeking disposition of funds when it is unclear whether certain of those plaintiffs have any liability at all," as there is a single plaintiff here with exposure to a potential source of liability.  *Id.* (citing *Wausau Ins. Cos. v. Gifford*, 954 F.2d 1098, 1101 (5th Cir. 1992)).  Nor is this a case in which "funds may consist of uncertain amounts, arrived at as the result of opaque internal accounting procedures," as Chase has laid out the discrete amounts in the accounts at issue.  *Id.* (citing *Wegmans Food Mkts., Inc. v. Ancoma, Inc.*, No. 06-CV-6059, 2006 WL 931604, at *2 (W.D.N.Y. Apr. 10, 2006)).

The Akiva Defendants next contend that the action lacks adverse claimants to the fund—another requirement of a proper interpleader action—because some accounts have no specific judgment creditors, and those that do had enough money to accommodate all the creditors at the time Chase brought this action.  (ECF No. 154 at 12-18.)  To "trigger[] interpleader," a plaintiff must show that it has "a real and reasonable fear of double liability or vexatious, conflicting claims."  *Wash. Elec.*, 985 F.2d at 679 (internal quotation marks and citation omitted).  "Claims are adverse to one another when recovery by one claimant necessarily precludes recovery by an 'adverse' claimant"—in other words, "the claims of the interested parties must be mutually exclusive."  *Wegmans*, 2006 WL 931604, at *4.

Here, the conflicting claims between Katz Group and the Akiva Defendants over control of and access to the funds in the listed accounts justify this action.  In May 2021, counsel for Katz Group informed Chase that Katz Group and Butter Management were "engaged in a dispute."  The letter instructed Chase not to allow any payments or withdrawals from the listed accounts without the written authorization of a specific subset of individuals, including one of the Akivas and representatives of Katz Group and Butter Management.  (ECF No. 96 ¶ 42; ECF No. 96-11.)  Katz Group's instructions conflicted with the instructions that Chase had on file for the relevant accounts, which listed Jacqueline and Richard Akiva as the sole signatories, and Chase then froze those accounts.  (ECF No. 96 ¶¶ 43-44.)  As further evidence of the conflict, even after Chase froze the accounts, the Akiva Defendants "advocated strenuously" for "Chase to honor the account access instructions" originally on the account—instructions that did not involve sign-off by a representative from Katz Group.  (ECF No. 141 ¶ 138.)  Chase was therefore subject to "mutually exclusive" and competing claims about access to funds.

9

While the Akiva Defendants try to characterize themselves and the Katz Group as having no interest in the funds (*id.* ¶ 147), the parties' actions—such as Katz Group's letter to Chase about access to the funds, as well as the Akiva Defendants' attempts to get Chase to ignore that letter and instead disburse funds (*see, e.g.*, ECF No. 154 at 4, 8-9)—show an ongoing conflict involving competing claims about access to the funds.  *See, e.g.*, *Madison Stock Transfer, Inc. v. Exlites Holdings Int'l*, 368 F. Supp. 3d 460, 467, 477 (E.D.N.Y. 2019) (action suitable for interpleader when a stock transfer agent received "competing directions . . . one of which directs it to issue the shares, another which directs it to refrain from doing so"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, No. 98-CV-1756, 2001 WL 11070, at *6 (S.D.N.Y. Jan. 4, 2001) (same when parties' "demands . . . clearly constitute conflicting claims").  As a result, the fact that some of the accounts do not have specific judgment creditors, or that others had enough funds to cover all creditors, does not render this action unsuitable for interpleader.  Moreover, "to demonstrate adversity, [t]he claims need not have actually asserted the adverse claims at the time the interpleader action is filed; the requirements of the interpleader statute are satisfied if the stakeholder faces *even the prospect* of adverse claims being asserted against property in its possession."  *Glenclova Inv. Co. v. Trans-Res., Inc.*, 874 F. Supp. 2d 292, 302 (S.D.N.Y. 2012) (internal quotation marks and citation omitted) (emphasis added).  Even if neither Katz Group nor the Akiva Defendants had tried to execute on the accounts at the time Chase brought the interpleader action, their reported conflict demonstrated the prospect of future adverse claims.

The Akiva Defendants next object that a dispute about the process for account withdrawals does not meet the adversity requirement because Chase's own policies state that Chase is not required to honor a multiple-signature requirement for business accounts.  (ECF No. 154 at 16-17, 21.)  But nothing in Chase's policy says that it *will not* comply with multiple-

signature requirements or ignore them entirely; Chase's policy simply states that it is "not required to comply with any multiple-signature requirement." (ECF No. 96-13 at 16.) As Chase explains, such a policy statement might not have insulated it from liability had it ignored Katz Group's letter and permitted withdrawals or disbursements from the accounts upon a request by only the Akiva Defendants. (ECF No. 162 at 8-9.) Critically, the "availability of interpleader does not depend on the merits of the potential claims against the stakeholder." *William Penn Life Ins. Co. of N.Y. v. Viscuso*, 569 F. Supp. 2d 355, 359 (S.D.N.Y. 2008). A "party is not required to evaluate the merits of conflicting claims at its peril; rather, it need only have a good faith concern about duplicitous litigation and multiple liability if it responds to the requests of certain claimants and not to others." *Sotheby's*, 802 F. Supp. at 1065. Indeed, as one leading treatise explains, "in the usual case, at least one of the claims will be quite tenuous." 7 Wright & Miller, Federal Practice and Procedure § 1704 (3d ed. 2023). Thus, even if the Akiva Defendants are right that Katz Group's claim to restrict access to the funds was unsupported on the merits, Chase was still entitled to bring this action.

Finally, the Court rejects the Akiva Defendants' argument that Chase cannot bring an interpleader action because it brought the action in bad faith and after undue delay. (ECF No. 154 at 20-21.) Although "interpleader is fundamentally an equitable remedy," and "one who seeks equitable relief must come into court with clean hands," *William Penn*, 569 F. Supp. 2d at 362, Chase explains that it reasonably instructed and expected the accountholders to send joint notarized instructions or a court order on how to resolve the conflict and instituted the interpleader action once the parties failed to do so. (ECF No. 162 at 3 n.7.) The cases the Akiva Defendants cite in which courts found bad faith present provide a contrast, as they involved actions in which the plaintiff declined to comply with a court order, *Truck-A-Tune, Inc. v. Re*,

856 F. Supp. 77, 81 (D. Conn. 1993), or in which the plaintiff was "completely controlled by one

of the interpleaded defendants," suggesting only an illusory concern about competing claims,

*Kelly v. Raese*, 377 F.2d 263, 266 (4th Cir. 1967).  Although Chase perhaps could have brought

this interpleader action earlier and better safeguarded the funds to avoid premature disbursement,

this Court declines to deny Chase the ability to bring an interpleader action altogether and can

instead consider such delay in subsequent phases of litigation, such as the determination of

attorney's fees.  *See, e.g.*, *Indemnity Ins. Co. of N. Am. v. Robinson*, No. 90-CV-3765, 1991 WL

173115, at *8 (S.D.N.Y. Aug. 28, 1991).[4]

Ultimately, Chase's concern consists of more than an "inchoate, uncertain claim asserted

against the general assets of a party," contrary to the Akiva Defendants' characterization.  (ECF

No. 154 at 16 (quoting *Doskocil v. Fifth Ave. Partners Ltd.,* No. 91-CV-1522, 1992 WL 75209,

at *2 (D. Kan. Mar. 6, 1992)).  As a result, this Court cannot say that Chase's action is "so utterly

baseless that [its] assertion of multiple claims is not made in good faith," *Fidelity*, 192 F. Supp.

2d at 178 (internal quotation marks and citation omitted), especially in light of the Supreme

Court's guidance that the interpleader statute is "remedial and to be liberally construed," *State

Farm*, 386 U.S. at 533.

Accordingly, the Court concludes that Chase's interpleader action has been properly

brought and grants Chase's requested relief as permitted by Section 2361: an injunction that

prohibits Defendants from attempting to recover the interpleader funds outside this action by

---

[4] The Akiva Defendants also argue that Chase cannot bring an interpleader action because it is independently liable to them.  (ECF No. 154 at 22-25.)  Because the Court grants Chase's motion to dismiss all the Akiva Defendants' counterclaims, those counterclaims do not prevent the Court from determining that Chase can validly bring this interpleader action.

"instituting or prosecuting any proceeding in any State or United States court affecting the property . . . involved in the interpleader action."  28 U.S.C. § 2361.

### 2.      Clawback of N.E.W. Corp.'s Funds

Chase next seeks an injunction ordering Defendant N.E.W. Corp. to return the funds that it received from the Marshal of the City of New York.  (ECF No. 134 ¶ 5; ECF No. 135 at 15-17.)  As a result of N.E.W. Corp.'s efforts to obtain funds from the 17th Street accounts as a creditor, the Marshal issued a levy to Chase on behalf of N.E.W. Corp., at which point N.E.W. Corp. received $873,666.42 in funds released from the accounts.  (ECF No. 134 ¶ 5.)

The Court declines to issue such relief.  As the Court explained in a previous order denying a similar request, Chase's request departs from the traditional ex ante relief provided for in an interpleader action.  (*See* ECF No. 125.)  Other than a broad appeal to a residual clause in 28 U.S.C. § 2361, which primarily discusses injunctions against the institution or prosecution of other suits, Chase again cites no authority for the position that this Court can in effect undo the effect of a consummated recovery based on a final judgment in a separate case.  While Chase cites authorities to explain that the interpleader device was meant to remedy the difficulties associated with an earlier claimant appropriating a disproportionate share of funds, those authorities simply show that the creation of the interpleader device was meant to *prevent* such a situation.  (*See* ECF No. 135 at 15-16.)  Nothing in those authorities suggests that courts should claw back funds that have already been disbursed.

Moreover, even if Section 2361 could be read broadly enough to authorize Chase's requested relief, nothing in that statute obligates the Court to issue such relief, and this Court does not find that such an order would be an appropriate exercise of its equitable power.  Indeed, had Chase wanted to avoid this situation, it could have deposited the relevant funds with the

court upon initiating this action, as plaintiffs often do in actions under the federal interpleader statute. *See Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 395-97 (S.D.N.Y. 2006).

### 3.      Chase's Deposit of Funds and Discharge

Chase also requests that it be permitted to deposit the interpleader funds with the Court and, upon such deposit, be discharged from liability.  No party opposes Chase's request to deposit funds with the Court, although ConnectOne Bank and Katz Group request that each account's funds be maintained in segregated accounts, and that the Court clarify that such deposit does not affect the parties' priorities and interests in the funds.  (*See* ECF No. 151 ¶ 6; ECF No. 152 ¶¶ 10-11).  The Akiva Defendants oppose Chase's request to be discharged of liability on the ground that Chase may be independently liable to the Akiva Defendants for bringing an allegedly improper interpleader action.  (ECF No. 154 at 14.)

The Court grants Chase's request to deposit the relevant funds, as well as ConnectOne Bank's and Katz Group's requests to keep the funds segregated by account.  In the first stage of interpleader actions, "the court determines whether interpleader jurisdiction exists and, if it does, discharges the stakeholder from the action." *William Penn*, 569 F. Supp. 2d at 359; *see also MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 314 (E.D.N.Y. 2010) ("Generally, once an interpleader plaintiff has satisfied the jurisdictional requirements of an interpleader claim, the Court will discharge the plaintiff from liability and dismiss it from the case."); *Fidelity*, 192 F. Supp. 2d at 182-83 (discharging interpleader plaintiff upon concluding that the "interpleader action is appropriate and [the plaintiff] fully complied with the requirements of [28 U.S.C.] § 1335").

The Akiva Defendants object that Chase improperly brought this impleader action.  But as discussed above, Chase has met the requirements for statutory interpleader, as there are two or more adverse claimants of at least minimally diverse citizenship who claim entitlement to money

of more than $500.[5]  *Hapag-Lloyd*, 814 F.3d at 150-51.  Chase also properly brings this action

under Rule 22 interpleader, as Chase is a party exposed to "double or multiple liability" under

the scope of the rule and has established independent subject matter jurisdiction.  Fed. R. Civ. P.

22(a)(1).[6]  The Akiva Defendants also point to the counterclaims in their answer as grounds for

denying Chase's motion to be discharged from liability.  But the Court grants Chase's motion to

dismiss the Akiva Defendants' counterclaims, and those counterclaims therefore do not preclude

the Court from discharging Chase from liability.

    As a result, Chase will be discharged from liability upon its deposit of the relevant funds

with the Court, and those funds will be maintained in segregated accounts, pursuant to the

requests by ConnectOne Bank and Katz Group.

### B.  The Akiva Defendants' Motion for Joinder

    The Akiva Defendants move this Court to order Chase to join certain necessary parties as

defendants in this interpleader action.  (ECF No. 160.)  Chase represents that it has received no

---

[5] Courts within the Circuit "disagree over whether deposit is a prerequisite to jurisdiction or a condition of maintaining jurisdiction."  *N.Y. Life Ins. Co. v. Sahani*, 730 F. App'x 45, 49 (2d Cir. 2018) (summary order).  *Compare Glenclova*, 874 F. Supp. 2d at 301 ("[A] deposit [with the court of the res in controversy] or a bond is a jurisdictional prerequisite for statutory interpleader relief." (internal quotation marks and citation omitted)), *with William Penn*, 569 F. Supp. 2d at 360 ("[D]eposit has been construed as a requirement of maintaining interpleader jurisdiction, rather than a prerequisite to bringing suit.").  This Court concludes that Chase's request to deposit funds satisfies the statutory requirement and declines to adopt a "draconian approach" that strictly treats deposit as a perquisite for jurisdiction.  *Allstate Indem. Co. v. Collura*, No. 15-CV-5047, 2017 WL 6380343, at *6 (E.D.N.Y. Feb. 7, 2017), *report and recommendation adopted in part, rejected in part*, 2017 WL 1076328 (E.D.N.Y. Mar. 22, 2017).  "[I]n any event," even if the statutory deposit requirement were jurisdictional, Chase "would be entitled to cure any jurisdictional defect created by the delay in depositing funds."  *Singh*, 2017 WL 10187670, at *4; *see also Sahani*, 730 F. App'x at 49 (concluding that any jurisdictional defect from lack of deposit "was cured *nunc pro tunc* when [interpleader plaintiff] made its deposit . . . before the district court entered final judgment").

[6] While Rule 22 interpleader requires an independent basis for subject-matter jurisdiction, Chase's action meets the requirements of diversity jurisdiction: the parties are completely diverse (*see* ECF No. 96 ¶¶ 22-28), and the amount in controversy exceeds $75,000.

communications from those parties and that the Akiva Defendants cite no authority to suggest

that Chase bears the responsibility to ferret out every party that might have an interest in the

accounts.  "Because Rule 19 protects the rights of an absentee party," however, "both trial courts

and appellate courts may consider this issue [of whether a necessary party must be joined] sua

sponte even if it is not raised by the parties to the action."  *MasterCard Int'l v. Visa Int'l Serv.*

*Ass'n, Inc.*, 471 F.3d 377, 382-83 (2d Cir. 2006).  Accordingly, because the Akiva Defendants'

motion identifies the allegedly necessary parties and provides reasons for their joinder, this Court

construes that motion as a motion for joinder of those parties.  *Cf. Lib. Mut. Ins. Co. v. Sterling*

*Ins. Co.*, No. 19-CV-3374, 2020 WL 6699872, at *2 (evaluating motion by defendant to join

required parties).

       Under Rule 19, a court "must determine whether an absent party belongs in the suit."

*Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).  A party is required if, "in that

person's absence, the court cannot accord complete relief among existing parties," or, "that

person claims an interest relating to the subject of the action and is so situated that disposing of

the action in the person's absence may . . . as a practical matter impair or impede the person's

ability to protect the interest; or . . . leave an existing party subject to a substantial risk of

incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R.

Civ. P. 19(a)(1).  Here, the Akiva Defendants identify five additional parties they consider

necessary to the action: Amcojor Realty Corporation ("Amcojor"), ASP Watch Guard & Patrol

Inc. ("ASP"), Empire Merchants, LLC ("Empire"), Scott Sartiano & Columbia Consultants

("Sartiano"), and 150 Pin High, LLC, 150 Habern, LLC, and 150 AB, LLC ("Pin High").  (ECF

No. 160 at 2-3.)

The Akiva Defendants' motion fails as to ASP and Sartiano.  As Chase points out, neither of those parties has any judgment against any accountholder at this point; ASP's action against Richard Akiva is still pending, and Sartiano's action has yet to be initiated.  (ECF No. 161 at 4.) As such, there is no evidence in the record that either of them currently has any judgment to enforce, meaning they have no interest that could be impaired by the disposition of this action.

More importantly, however, none of the identified parties have made a claim *to Chase* that they are entitled to any of the relevant funds.  Chase is entitled to bring this interpleader action because it has demonstrated "a real and reasonable fear of double liability or vexatious, conflicting claims" from the named Defendants in this case.  *Wash. Elec.*, 985 F.2d at 679 (internal quotation marks and citation omitted).  In contrast, none of the five parties named by the Akiva Defendants have taken any steps to execute on a judgment, let alone even communicate to Chase a desire to access the funds in the accounts.  As a result, the Court declines to order Chase to add those non-parties as defendants at this time.

The Court might view the Akiva Defendants' motion differently if a non-party creditor attempted to collect on a judgment and Chase declined to add it as a party to the action.  Such an action would further support the notion that the party's interests might be impaired by resolution of this action without the party's participation.  Indeed, when N.E.W. Corp. informed Chase about its claim to funds in the relevant accounts, Chase moved to amend its complaint and added N.E.W. Corp. as a Defendant.  (*See* ECF Nos. 91, 93.)  But until one of the non-parties contacts Chase, this Court declines to determine that Chase must add them as necessary parties and therefore denies the Akiva Defendants' motion to order Chase to join the identified parties.  Such denial is without prejudice to an appropriate motion should Chase be contacted by additional parties seeking a portion of the res.

### C.      Chase's Motion to Dismiss the Akiva Defendants' Counterclaims

The Akiva Defendants bring various counterclaims against Chase, and Chase has moved to dismiss all the counterclaims.  Because the Akiva Defendants fail to plausibly assert any of their claims, Chase's motion to dismiss those counterclaims is granted.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.

As an initial matter, Chase contends that its Deposit Account Agreement ("DAA"), which the accountholders signed, absolves it of any liability.  (ECF No. 169 at 12-15.)  The DAA states that Chase will have "no liability" related to its decision to freeze accounts, and that it "will not be liable for indirect, special, or consequential damages."  (ECF No. 96-13 at 22.)  The disclaimer in the DAA is not enforceable against the Akiva Defendants, however, because they are not parties to the DAA.  (ECF No. 172 at 11-14.)  "It goes without saying that a contract cannot bind a nonparty."  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).  The DAA is an agreement that *accountholders* agree to when opening an account with Chase.  (*See, e.g.*, ECF No. 96 ¶ 30 ("When opening the 29-33 Ninth Avenue Accounts, 29-33 Ninth Avenue agreed to a Deposit Account Agreement . . . with Chase.").)  Chase asks the Court to conflate the entities

that opened the accounts with the individuals who operate the accounts, but they do not cite any authority suggesting that such conflation would be appropriate.  While New York law provides that "a court may 'pierce the veil' and bind a non-signatory to a contract's terms" in certain circumstances, Chase does not argue that such an exception is applicable, nor could it—that exception applies when "the non-signatory 'exercised complete control over a signatory and employed that domination to injure another signatory to the agreement,'" and Chase makes no such allegations here.  *In re All Year Holdings Ltd.*, 645 B.R. 10, 22 (S.D.N.Y. 2022) (quoting *Boroditskiy v. Eur. Specialties LLC*, 314 F. Supp. 3d 487, 494 (S.D.N.Y. 2018)).  The Court therefore proceeds to evaluate each counterclaim.

### 1.     Conversion

The Akiva Defendants bring a claim for unlawful conversion due to Chase's restriction of the relevant bank accounts.  "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession."  *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006).  "New York courts have uniformly held, however, that a claim for conversion does not lie with respect to moneys deposited with a bank."  *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735, 2019 WL 4688629, at *6 (S.D.N.Y. Sept. 26, 2019); *see also Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 174-75 (S.D.N.Y. 2012).  Money deposited with a bank generally "becomes the property of the depository bank," and as a result, depositors "d[o] not possess lawful control over the funds prior to the restraints."  *Cruz*, 855 F. Supp. 2d at 175.  As a result, then, if a plaintiff complains of a bank unlawfully imposing restraints on a bank account, "the appropriate remedy is contract—not tort."  *Id.*; *see also Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 643 (E.D.N.Y. 2000).

Even if the type of deposit here could generally be subject to conversion claims, Chase acted with authority in this situation, negating a necessary element that the defendant acted "without authority."  As Chase points out, the DAA provides that Chase can "close your account . . . at any time for any reason or no reason without prior notice."  (ECF No. 96-13 at 22.)  Chase also invokes a more specific provision of the DAA that specifies that Chase may "decline or prevent transactions" if it "receive[s] conflicting information or instructions regarding account ownership, control, or activity."  (*Id.*)  Thus, even though the Akiva Defendants are not party to the DAA, the DAA still provides Chase with a source of authority pursuant to which it froze the accounts.  And while the Akiva Defendants repeatedly allege that Chase's continued freezing of their accounts violated Chase's own policies (*see, e.g.*, ECF No. 141 ¶¶ 74, 78, 103, 106), they fail to identify any specific policies that Chase violated.  "A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory," especially when it appears that Chase's written policies (in the form of the DAA) are referenced and already part of the relevant record.  *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018).

### 2.    Negligence and Negligent Misrepresentation

The Akiva Defendants next bring claims for negligence and negligent misrepresentation. "The elements of a negligence claim under New York law are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (internal quotation marks and citation omitted).  Similarly, a claim of negligent misrepresentation requires a plaintiff to show: "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect;

and (3) reasonable reliance on the information." *JPMorgan Chase Bank, N.A. v. Freyberg*, 171 F. Supp. 3d 178, 191 (S.D.N.Y. 2016) (internal quotation marks and citation omitted).

Both the Akiva Defendants' claims fail as a matter of law because they are not customers of Chase Bank (at least as it relates to the accounts at issue here). As "a non-customer of Chase," the Akiva Defendants cannot show "any relationship or privity with the bank that would give rise to a duty of care." *Fisher v. N.Y. Chase Manhattan Bank*, No. 16-CV-6030, 2018 WL 1274560, at *4 (S.D.N.Y. Mar. 8, 2018). That fact is underscored by the Akiva Defendants' own insistence that they are non-parties to the DAA and are not the accountholders themselves, as discussed earlier. Even if the Akiva Defendants were the accountholders, Chase's duty to them would be defined by "the Deposit Account Agreement rather than any independent legal duty," and as explained earlier, the DAA appears to permit Chase's decision to freeze the relevant accounts. *Serengeti Express, LLC v. JP Morgan Chase Bank, N.A.*, No. 19-CV-5487, 2020 WL 2216661, at *3 (S.D.N.Y. May 7, 2020).

The Akiva Defendants contend that Chase owed them extra-contractual duties because of a special fiduciary duty, which may arise when "one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party." *Reed v. Luxury Vacation Home LLC*, 632 F. Supp. 3d 489, 515 (S.D.N.Y. 2022) (internal quotation marks and citation omitted). That position, however, runs afoul of the "general rule that banks do not owe fiduciary duties either to non-customers or even to customers in a deposit or lending relationship." *Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 26 (S.D.N.Y. 2009). Additionally, "unilateral trust or confidence does not automatically create a fiduciary relationship; the trust or confidence must be accepted as well." *Id.* (internal quotation marks and citation omitted). Accordingly, because

of the general rule that "banking relationships are not viewed as special relationships giving rise

to a heightened duty of care," the Akiva Defendants' claims of negligence and negligent

misrepresentation are dismissed.  *Banque Arabe et Internationale D'Investissement v. Md. Nat'l

Bank*, 57 F.3d 146, 158 (2d Cir. 1995).

### 3.      Abuse of Process

In New York, an "abuse-of-process claim lies against a defendant who (1) employs

regularly issued legal process to compel performance or forbearance of some act (2) with intent

to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is

outside the legitimate ends of the process."  *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir.

2003) (internal quotation marks and citation omitted).

Here, the Akiva Defendants assert that Chase's decision to initiate an interpleader action

and name them as Defendants constituted abuse of process.  "Under New York law, 'the

institution of a civil action by summons and complaint is not legally considered process capable

of being abused.'"  *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 106 (S.D.N.Y. 2020) (quoting

*Curiano v. Suozzi*, 63 N.Y.2d 113, 114 (1984)).  Similarly, the "use of appeals, objections, and

motions to prosecute . . . civil lawsuits" also does not support abuse-of-process claims.

*Manhattan Enter. Grp. LLC v. Higgins*, 816 F. App'x 512, 514-15 (2d Cir. 2020) (summary

order).  While the Akiva Defendants emphasize that Chase brought this interpleader action to

harm them and to achieve an improper collateral objective, they fail to address the fact that the

actions Chase took generally do not qualify as abuse of process.

### 4.      Civil Conspiracy

"It is textbook law that New York does not recognize an independent tort of conspiracy."

*Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*, 206 F. Supp. 3d 869, 913 (S.D.N.Y.

2016) (internal quotation marks and citation omitted).  Thus, because none of the Akiva

22

Defendants' underlying tort claims survive Chase's motion to dismiss, its civil conspiracy claim must also fail.

Moreover, even if the Akiva Defendants plausibly alleged an underlying tort, their civil conspiracy claim would still fail because they have not identified any co-conspirators.  One of the elements of civil conspiracy is "the corrupt agreement between two or more persons," *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 442 (S.D.N.Y. 2019) (internal quotation marks and citation omitted), but the Akiva Defendants allege only that Chase was in a conspiracy "with to be discovered third-parties" and "unknown third-parties" (ECF No. 141 ¶¶ 219-21).  Thus, the counterclaim "fails to allege the basic elements of civil conspiracy by failing to identify the . . . co-conspirator."  *Davis v. 1568 Broadway Hotel Mgmt. LLC DoubleTree Hotel Times Square*, No. 17-CV-1895, 2018 WL 317849, at *4 (S.D.N.Y. Jan. 5, 2018).

### 5.    Tortious Interference with Contract

"Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (internal quotation marks and citation omitted).

As explained earlier, Chase froze the accounts pursuant to the DAA, which gave it the right to freeze accounts upon receiving conflicting instructions about access to the account (or for any other reason).  The Akiva Defendants' tortious interference claim therefore fails because when a "complaint alleges nothing more than [a party's] exercise of its contractual right, it cannot support a claim for tortious interference with contract."  *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 589 (2d Cir. 2005).  That is so because "exercising

contract rights does not constitute bad faith, a required element of a tortious interference claim." *Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 267 (E.D.N.Y. 2016).

Beyond that threshold issue, the Akiva Defendants fail to allege with any specificity that Chase had the requisite knowledge of their contracts with third parties, a necessary element of a tortious interference claim.  The Akiva Defendants assert in a conclusory manner that "Chase clearly knew of the[] contracts" between the Akiva Defendants and third parties (ECF No. 141 ¶ 226), but "the plaintiff must provide specific allegations of the defendant's knowledge and cannot survive a motion to dismiss by making merely a conclusory assertion of knowledge." *Medtech Prods. Inc v. Ranir, LLC*, 596 F. Supp. 2d 778, 813 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).  As a result, when a "complaint contains no specific allegations to support Plaintiffs' conclusory assertion that [Defendant] knew" of a contract, the claim must be dismissed.  *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001).

### 6.    Tortious Interference with Business Relations

The elements of tortious interference with a business relationship are that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."  *Catskill Dev., L.L.C. v. Park Place Enter. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).

Again, the Akiva Defendants fail to plead necessary elements of this claim.  For example, the Akiva Defendants "allege[] conduct directed at itself" and not conduct aimed at third parties, and such allegations are necessary for the second element of a claim of tortious interference with business relations.  *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 403 (S.D.N.Y. 2012); *see also Bruce Bzura, LLC v. Moss*, No. 17-CV-813, 2018 WL 7858772, at *3 (S.D.N.Y. Oct. 25, 2018) ("[T]he defendant must target some activities toward the third party and convince

24

them not to enter into a continuing business relationship with the plaintiff."). Here, all the Akiva Defendants allege is that Chase tried to harm them by freezing the accounts, but there are no allegations of activity targeted toward third parties. Similarly, "[a]s a general rule, in order to satisfy the third element of tortious interference with business relations, the defendant's conduct must amount to a crime or an independent tort." *Global Packaging Servs., LLC v. Global Printing & Packaging*, 248 F. Supp. 3d 487, 494 (S.D.N.Y. 2017) (internal quotation marks and citation omitted). The Akiva Defendants allege no criminal behavior and do not show an independent tort. And while "one exception to the general rule" exists if the plaintiff can show that the defendant engaged in conduct "for the sole purpose of inflicting intentional harm on plaintiffs," *id.* (internal quotation marks and citation omitted), the Akiva Defendants' allegations do not rise to that level.

### 7. Prima Facie Tort

"Prima facie tort is a disfavored claim under New York law." *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002). The four elements of a prima facie tort claim are: "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." *Id.* Again, the Akiva Defendants fail to allege necessary elements of this claim. For example, "[t]he first element requires 'disinterested malevolence,' which means that 'the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm.'" *Id.* at 304-05 (quoting *Twin Lab'ys, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990)). The Akiva Defendants ask this Court to draw the implausible inference that Chase's decision to freeze the accounts upon receiving Katz Group's letter was made solely to harm the Akiva Defendants, but Chase's decision to freeze the accounts appears to have been squarely within the realm of its written policies.

### 8.     Common Law Indemnification

Finally, the Akiva Defendants bring a claim for common law indemnification. "Under New York law, the common law right to indemnification arises when one party is compelled to pay for the wrong of another." *Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 329 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). Such an action "can be sustained only if: (1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them." *Id.* (internal quotation marks and citation omitted). As a result, a "third party action for indemnity does not lie against one who has not violated a duty owed to plaintiff in the primary action," as a "key element" of the claim is a "separate duty owed the indemnitee by the indemnitor." *Id.* (internal quotation marks and citation omitted). For the reasons discussed earlier in the discussion of the negligence and negligent misrepresentation claims, no such duty is owed by Chase to the Akiva Defendants, and the Akiva Defendants' common law indemnification claim therefore also fails.

### D.     ConnectOne Bank's Motion to Dismiss Katz Group's Crossclaim

In its answer, Katz Group brings a crossclaim against ConnectOne Bank seeking a declaration that it "has a validly perfected and first priority security interest in the Deposit Accounts which takes priority over any interest that other creditors may have in the accounts," including ConnectOne Bank. (ECF No. 67 at 11.) ConnectOne Bank moves to dismiss Katz Group's crossclaim for failure to state a claim. Because Katz Group's allegations do not show that it has a perfected security interest, ConnectOne Bank's motion to dismiss is granted, although the Court declines to definitively determine relative priority among specific creditors at this stage.

"For a security interest to be perfected in a deposit account . . . there must be control over the account." *United States v. Asare*, No. 15-CV-3556, 2022 WL 6763786, at *5 (S.D.N.Y. Oct. 11, 2022). New York's Uniform Commercial Code defines how parties may perfect their security interests. As relevant here, a "security interest in deposit accounts . . . is perfected by control under Section 9-104 . . . when the secured party obtains control and remains perfected by control only while the secured party retains control." N.Y. U.C.C. 9-314. In turn, Section 9-104 states that a "secured party has control of a deposit account" in three scenarios: if "(1) the secured party is the bank with which the deposit account is maintained; (2) the debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor; or (3) the secured party becomes the bank's customer with respect to the deposit account." *Id.* § 9-104(a).

None of those three scenarios applies here, and as a result, Katz Group's claim for a declaration that it "has a validly perfected and first priority security interest" fails. First, Katz Group is plainly not "the bank with which the deposit account is maintained"; that entity is Chase. *Id.* § 9-104(a)(1). Second, there is no authenticated record among the "debtor, secured party, and bank" (here, the accountholder, Katz Group, and Chase, respectively) that the bank will comply with instructions by Katz Group "without further consent by the debtor" (here, the accountholders). *Id.* § 9-104(a)(2). Finally, Katz Group has not become "the bank's customer with respect to the deposit account," as Katz Group does not allege that it assumed the identity of the accountholder. *Id.* § 9-104(a)(3).[7]

---

[7] While Katz Group alleges that it took possession of the relevant accounts when Butter Management defaulted, it describes such possession as relating to "the funds in [Butter

Katz Group cites its May 2021 letter to support its claim of control.  (ECF No. 79 at 6-7.)  But the only method of control that letter might meet is Section 9-104(a)(2)'s authenticated record method, and the Katz Group letter is not signed by anyone other than Katz Group—notably, it is not signed by the relevant accountholders or Chase, as is required for control.  More critically, the letter does not state that Chase "will comply with instructions originated by [Katz Group] directing disposition of the funds in the deposit account without further consent by [the accountholders]."  N.Y. U.C.C. § 9-104(a)(2).  Indeed, as ConnectOne Bank points out, the letter states precisely the opposite: that funds can be disbursed only with the consent of *three* different sets of parties—"(1) Paul Marcaccio or Jurgen Schriber, *and* (2) Richard Akiva or Jacquelina Akiva, *and* (3) Richard O'Donnell"—only one of whom is affiliated with Katz Group.  (ECF No. 96-11 at 2.)  Thus, Katz Group "failed to allege . . . that it obtained control over the subject bank account," and thereby "failed to [allege] that it perfected a security interest in the subject bank account."  *World Global Cap., LLC v. Sahara Rest. Corp.*, 194 N.Y.S.3d 261, 264 (2d Dep't 2023).  The Court does not determine, however, what the relative priorities are among various creditors, and defers that issue to the second stage of the interpleader action.

III.    **Conclusion**

For the foregoing reasons, it is hereby ORDERED that:

1.      Chase's motion for injunctive and other relief is GRANTED in part and DENIED in part:

   a)    Chase's motion for an injunction prohibiting the interpleader Defendants from pursuing the funds at issue in this case outside of this interpleader action is granted.  Defendants are hereby enjoined from attempting to recover the interpleader funds outside this action by instituting or prosecuting any

---

Management's] accounts" (ECF No. 79 at 2), and it does not allege that it itself became "[Chase's] customer with respect to the deposit account."  N.Y. U.C.C. § 9-104(3).

        proceeding in any State or United States court affecting the property involved in this interpleader action.

    b)   Chase's motion to deposit the relevant funds and be discharged from liability upon such deposit is granted.  The funds shall be segregated by Account when deposited with the Court.  The parties are directed to confer, and, by January 31, 2024, to submit a joint proposed order concerning the logistics of the deposit.

    c)   Chase's motion to claw back funds from N.E.W. Corp. is denied.

2.      The Akiva Defendants' motion for joinder of necessary parties is DENIED.

3.      Chase's motion to dismiss the Akiva Defendants' counterclaims is GRANTED.

4.      ConnectOne Bank's motion to dismiss Katz Group's crossclaim is GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 133, 155, and 168.

        SO ORDERED.

Dated: January 5, 2024
      New York, New York

                                    J. PAUL OETKEN
                                United States District Judge